O

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| PATRICIA C. REITER, et al.,<br><br>        Plaintiffs,<br><br>        v.<br><br>MUTUAL CREDIT CORPORATION, et al.,<br><br>        Defendants. | CASE NO. SACV 09-0811 AG (RNBx)<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO DISMISS** |

    This case involves allegations of insurance fraud. Plaintiffs Patricia Reiter ("Mrs. Reiter"), Christopher Reiter, and James Singler, as successor trustee of the Jack L. Reiter and Patricia C. Reiter Irrevocable Trust, U/A/D August 27, 2000 (the "Reiter Trust") (collectively "Plaintiffs") filed a Complaint against Defendants Mutual Credit Corporation ("MCC"), Spurling Group, LLC ("Spurling"), Spurling Group II, LLC ("Spurling II"), Michael Brown ("Brown"), Anthony Jacobson ("Jacobson"), David Doten ("Doten"), Rumson Capital, L.P. ("Rumson Capital"), National Wealth Advisors ("NWA"), Richard L. Swope ("Swope"), Swope Lamberson, P.A. ("SWP"), and Todd Shelbaugh ("Shelbaugh") (collectively "Defendants").

Defendants MCC, Spurling, Brown, and Jacobson (collectively "MCC Defendants") filed a motion to dismiss all of the claims against them. (MCC Defendants' Motion to Dismiss Plaintiffs' Complaint, Docket Entry ("D.E.") 32 ("MCC Motion").) Doten joined in the MCC Motion. (D.E. 44.) Defendants Shelbaugh and NWA (collectively, the "NWA Defendants") also filed a motion to dismiss. (NWA Defendants' Motion to Dismiss Plaintiffs' Complaint, D.E. 40 ("NWA Motion").) After considering the arguments and papers submitted by the MCC Defendants, Doten, and the NWA Defendants (collectively, the "Moving Defendants") and Plaintiffs, the Motions are GRANTED in part and DENIED in part. .

**PRELIMINARY MATTER**

To support their motion, the MCC Defendants request that the Court take judicial notice of two documents. Under Federal Rule of Evidence 201, "[a] judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201. Facts subject to judicial notice may be considered on a motion to dismiss. *Mullis v. United States Bankruptcy Ct.*, 828 F.2d 1385, 1388 (9th Cir. 1987).

Defendants request that the Court take judicial notice of the following documents: (1) a copy of the Judgment entered on August 18, 2008 in *Mutual Credit Corp v. Kueltzo*, Orange County, California Superior Court, Case No. 07CC07923; and (2) a copy of the Judgment entered on August 28, 2008 in *Jones v. Mutual Credit Corp.*, Orange County, California Superior Court, Case No. 07CC01123. The Court finds that these documents meet the requirements of Rule 201, and Defendants' request for judicial notice is GRANTED as to those two documents.

Case 8:09-cv-00811-AG -RNB   Document 62   Filed 11/23/09   Page 2 of 16   Page ID #:595

2

**BACKGROUND**

The following facts are taken from the Plaintiff's Complaint, and for the purposes of this motion, the Court assumes them to be true.

Defendants run a life insurance and investment enterprise (the "MCC Enterprise"). (Compl. ¶ 1.) The primary clients of the MCC Enterprise are senior citizens who: (1) possess a substantial net worth; (2) are trusting of their accountants, insurance agents and other fiduciaries; and (3) are generally unsophisticated or unable to understand, often due to advanced age or some other infirmity, complex insurance and loan transactions. (Compl. ¶¶ 44-46.) After Defendants identify a potential client, the client is induced into purchasing a life insurance policy to be held in trust while Defendants finance the premiums. (Compl. ¶ 48.) Defendants structure the financing to result in large amounts of interest charges, intended to ensure that the client will relinquish ownership of the trust to Defendants after two years. (Compl. ¶¶ 48-55.) Next, Defendants sell the policy in a secondary market through a "life settlement." (Compl. ¶¶ 48-55.) Defendants profit from the sale of the policy, the brokerage of the sale, and the interest charges incurred on the loan financing the purchase of the policy. (Compl. ¶¶ 48-55.) The end result is that the client is left with next to nothing while a third-party investor owns the life insurance policy, awaiting the death of the insured. (Compl. ¶¶ 48-55.)

Defendants executed this scheme against the Plaintiffs. Defendant Swope had a previous and trusting relationship with Ms. Reiter and her family. (Compl. ¶ 60.) Defendants Swope, NWA, and Shelbaugh contacted Ms. Reiter to sell her a life insurance policy. (Compl. ¶ 63.) The policy would be held in trust and financed by Defendant MCC. (Compl. ¶ 63.) In exchange for $270,000, Ms. Reiter agreed to allow Defendant Doten, the Administrative Trustee, and Defendant Swope, the Investment Trustee, to purchase a life insurance policy on her life with a death benefit of $9,000,000. (Compl. ¶¶ 64, 68-70.) Ms. Reiter selected her son, Christopher Reiter, to be the beneficiary of her insurance policy. (Compl. ¶ 65.) The Jefferson Pilot Life Insurance Company issued a policy to Ms. Reiter in the amount of $9,000,000. (Compl. ¶ 73.)

The Reiter Trust relinquished ownership of the policy after two years because of the high

amounts of interest incurred.  (Compl. ¶¶ 76-78.)  Defendant MCC assigned the note to either Defendant Spurling or Spurling II.  (Compl. ¶ 79.)  Defendants ultimately sold the policy for $2.7 million through a life settlement.  (Compl. ¶¶ 84-85.)  Defendants took nearly $2.4 million for themselves, including a $720,000 broker commission.  (Compl. ¶¶ 86-87.)  Plaintiffs were left with a small amount of the sale price while a third-party investor held ownership of the policy on Ms. Reiter's life.  (Compl. ¶¶ 13, 90-91.)

Based on these facts and others, Plaintiffs bring eight claims, numbered as follows: (1) Violations of the Racketeer Influenced and Corrupt Organizations Act  ("RICO"), 18 U.S.C. § 1962 (a-d); (2) violation of California Business and Professions Code §§ 17200 *et seq*. ("UCL"); (3) breach of fiduciary duty; (4) aiding and abbetting breach of fiduciary duty; (5) fraudulent concealment in violation of California Civil Code §§ 1710 *et seq.*; (6) unjust enrichment, restitution, and imposition of a constructive trust; (7) fraudulent concealment, misrepresentations, and common law fraud; and (8) damages under Florida usury statutes.

Defendants Rumson Capital, Swope, and SWP all filed answers to Plaintiffs' Complaint. The MCC Defendants, joined by Doten, moved to dismiss the Complaint in its entirety under Rule 12(b)(6), and the NWA Defendants moved to dismiss under Rules 12(b)(6) and 9(b). Plaintiff filed a consolidated opposition to all of the Moving Defendants' Motions, and the MCC Defendants and NWA Defendants filed separate replies.

**LEGAL STANDARD**

A court should dismiss a complaint when its allegations fail to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  A complaint need only include "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2). "'[D]etailed factual allegations' are not required." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (May 18, 2009) (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 554, 555 (2007)).  The Court must accept as true all factual allegations in the complaint and must draw all reasonable inferences from those allegations, construing the complaint in the light most favorable to the plaintiff.

*Westlands Water Dist. v. Firebaugh Canal*, 10 F.3d 667, 670 (9th Cir. 1993).

But the complaint must allege "sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'" *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1940 (citing *Twombly*, 550 U.S. at 556). A court should not accept "threadbare recitals of a cause of action's elements, supported by mere conclusory statements," *Iqbal*, 129 S. Ct. at 1940, or "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). Dismissal without leave to amend is appropriate only when the Court is satisfied that the deficiencies of the complaint could not possibly be cured by amendment. *Jackson v. Carey*, 353 F.3d 750, 758 (9th Cir. 2003).

Fraud claims must meet the heightened pleading standard of Federal Rule of Civil Procedure 9(b), which requires enough specificity to give a defendant notice of the particular misconduct to be able to defend against the charge. *Bly-Magee v. California*, 236 F.3d 1014, 1019 (9th Cir. 2001) (citation omitted). To satisfy this specificity requirement, "the who, what, when, where, and how" of the misconduct must be alleged. *Cooper v. Pickett,* 137 F.3d 616, 627 (9th Cir. 1997) (internal quotation marks omitted). Thus, factual allegations must include "the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations." *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007).

Dismissal for failure to state a claim without leave to amend is appropriate only when the Court is satisfied that the deficiencies of the complaint could not possibly be cured by amendment. *See Jackson v. Carey*, 353 F.3d 750, 758 (9th Cir. 2003) (citing *Chang v. Chen*, 80 F.3d 1293, 1296 (9th Cir. 1996)); *See also Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000).

**ANALYSIS**

The Moving Defendants argue that all eight of Plaintiffs' claims fail under either Rule 12(b)(6) or 9(b).  The Court examines each of Plaintiffs' claims in turn.

**1.      PLAINTIFFS' FIRST CLAIM, FOR VIOLATIONS OF RICO**

Plaintiffs' first claim is for violations of RICO under 18 U.S.C. §§ 1962(a)-(d).  To adequately plead a RICO claim, a plaintiff must allege: (1) conduct (2) of an enterprise (3) through a pattern of (4) racketeering activity.  *Howard v. America Online, Inc.*, 208 F.3d 741, 746 (9th Cir. 2000).  The Moving Defendants argue that Plaintiffs have failed to adequately allege a pattern of racketeering activity.  The MCC Defendants also argue that Plaintiffs have not alleged the requisite injury to sustain their claims under §§ 1962(a) and (b), while the NWA Defendants argue that Plaintiffs have failed to adequately allege both (1) a RICO enterprise and (2) that the NWA Defendants participated in such an enterprise.

**1.1     Racketeering activity**

Both the MCC Defendants and the NWA Defendants argue that Plaintiffs failed to adequately allege a pattern of racketeering activity.  "Racketeering activity" is any act indictable under the several provisions of Title 18 of the United States Code, including mail or wire fraud.  Where mail or wire fraud is alleged as the underlying racketeering activity, RICO violations must be pled with particularity under Rule 9(b).  *See Moore v. Kayport Package Express, Inc.*, 855 F.2d 531 (9th Cir. 1989).  A RICO plaintiff must plead with particularity the time, place, and manner of each alleged act of RICO fraud, with the role of each defendant in each scheme.  *See Lancaster Comm. Hosp. v. Antelope Valley Hosp. Dist.*, 940 F.2d 397, 405 (9th Cir. 1991), *cert. denied*, 502 U.S. 1094 (1992).  But while "the factual circumstances of the fraud itself" must be alleged with particularity, allegations concerning the formation of the scheme and the

1  intent to defraud may be alleged generally. *Odom v. Microsoft Corp.*, 486 F.3d 541, 553-54 (9th
2  Cir. 2007) (en banc).
3        Plaintiffs' Complaint meets this standard by providing detailed allegations of Defendants'
4  allegedly deceptive and predatory life insurance premium financing and investment scheme.
5  (*See* Compl. ¶¶ 2-13, 59-91.)  Specifically, Plaintiffs allege that in late 2004 and 2005, some of
6  the MCC Defendants traveled to Florida to meet with other Defendants to solicit their
7  participation in the alleged financing scheme. (Compl. ¶ 59.)  Plaintiffs allege that Defendant
8  Swope, with Defendants Doten and Shelbaugh, identified Plaintiffs as potential victims of the
9  scheme due to Mrs. Reiter's substantial net worth and advanced age. (Compl. ¶ 62.)  According
10 to the Complaint, in April or May of 2005, Defendant Swope and representatives of the NWA
11 Defendants met with Mrs. Reiter in Osprey, Florida, and, in furtherance of the scheme, discussed
12 selling her a life insurance policy financed using the MCC Defendants' premium financing.
13 (Compl. ¶63.)  Mrs. Reiter then agreed to allow Defendants Swope, Shelbaugh, and Doten to
14 establish a trust and purchase a life insurance policy on her life (the "Jefferson Pilot Policy").
15 (Compl. ¶¶ 64-73.)  Defendant Swope, acting as the Investment Trustee, secured premium
16 financing through MCC to purchase the Jefferson Pilot Policy on Mrs. Reiter's life, and executed
17 an "Assignment of Life Insurance that purported to assign to MCC all rights associated with the
18 Jefferson Pilot Policy. (Compl. ¶ 72.)  After execution of the promissory note and assignment,
19 MCC assigned the note and assignment of the life insurance policy to either Spurling or Spurling
20 II.  (Compl. ¶ 79.)  After Mrs. Reiter fell ill, Defendants Doten, Shelbaugh and/or Swope
21 arranged for the sale of the Jefferson Pilot Policy to Peachtree for $2.7 million. (Compl. ¶¶
22 84-86.)  The Complaint details the sale of the Jefferson Pilot Policy to Peachtree, Defendants'
23 roles in the transaction, the structure of the deal (including the total broker commissions
24 improperly retained by Defendants), and distributions from the sale made among the Defendants.
25 (Compl. ¶¶84-88.)
26       Beyond these particularized allegations concerning the alleged scheme, Plaintiffs allege
27 that Defendants executed and perpetrated their scheme by using the wires and mails to create
28 and manage the scheme by sending marketing material, forms, applications, contracts,

promissory notes, assignments, correspondence, premium and commission payments, reports, data, summaries, statements and other materials. (Compl. ¶¶113-114, 143.)  Plaintiffs also allege that Defendants used the mails and wires with the specific intent to defraud plaintiffs as well as other victims. (Compl. ¶¶108-110.)  Finally, Plaintiffs allege that they relied to their detriment on Defendants' misrepresentations and omissions and that they were damaged by those misrepresentations and omissions.  (Compl. ¶111.)

Plaintiffs have sufficiently alleged the details of the scheme so that Defendants have "notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Bly-Magee*, 236 F.3d at 1019 (citing *Neubronner v. Milken*, 6 F.3d 666, 672 (9th Cir. 1993)); *see also In re Nat'l W.Life Ins. Deferred Annuities Litig.,* 467 F. Supp. 2d 1071, 1083 (S.D. Cal. 2006) (holding that plaintiffs' allegations of fraudulent mail and phone communications, even without allegations concerning the time, place, and specific content of the communications, satisfy Rule 9(b)'s requirement for pleading mail and wire fraud as well as a pattern of racketeering activity).

Not only have Plaintiffs sufficiently alleged racketeering activity, they have also sufficiently alleged a "pattern" of racketeering activity.  "[I]t is not necessary to show more than one fraudulent scheme or criminal episode to establish a pattern . . . . [C]ontinuity exists if the predicate acts are not isolated, i.e., if the predicate acts posed a threat of continuing activity." *Sun Sav. & Loan Ass'n v. Dierdorff*, 825 F.2d 187, 192-93 (9th Cir. 1987); *see also California Architectural Bldg. Prods., Inc. v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1469 (9th Cir. 1987).  Plaintiffs alleged a series of transactions and acts, orchestrated by each of the Defendants in furtherance of their common scheme, including: (1) the securing of a potential victim of the scheme, (Compl. ¶¶ 59-62); (2) inducing Mrs. Reiter to participate in the scheme and establishing a trust (Compl. ¶¶63-72); (3) securing a life insurance policy on Mrs. Reiter through Jefferson Pilot Life Insurance Company (Compl. ¶¶64-65, 73); (4) securing financing from Defendant MCC to finance the premiums for two years on the Jefferson Pilot Policy (Compl. ¶¶72, 75-78); and (5) arranging for and orchestrating the sale of the Jefferson Pilot Policy on the

open market (Compl. ¶¶84- 89). Further, Plaintiffs allege that Defendants perpetrate their scheme against unsuspecting seniors like Mrs. Reiter nationwide. (Compl. ¶¶42-58.) The Moving Defendants' argument that the Plaintiffs did not plead a pattern of racketeering activity fails.

### 1.2 Injury under Sections 1962(a) and (b)

The MCC Defendants argue that Plaintiffs have not alleged the requisite injury to sustain their claims under §§ 1962(a) and (b).

Under Section 1962(a), it is unlawful "for any person who has received any income derived . . . from a pattern of racketeering activity or through the collection of an unlawful debt . . . to use or invest . . . any part of such income . . . in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in, . . . interstate or foreign commerce." 18 U.S.C. §1962(a). The MCC Defendants claim that Plaintiff must specifically allege a distinct investment injury to support a claim under Section 1962(a). (MCC Brief 22-23.) But "the Supreme Court rejected the notion that in order to have standing under RICO a plaintiff must suffer a "racketeering injury" separate and apart from any injuries he or she has sustained as a result of the predicate acts." *In re Nat'l Mortgage Equity Corp. Mortgage Pool Certificates Sec. Litig.*, 682 F. Supp. 1073, 1081 (C.D. Cal. 1987) (citing *Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479 (1985)). Plaintiffs here have alleged that the MCC Defendants reap the benefit of exorbitant fees and interest obtained from unsuspecting seniors and their beneficiaries through their premium nonrecourse financing scheme, which, in turn, ultimately results in the MCC Defendants' acquisition of these policies and even greater windfalls, either by selling these policies on the secondary market or by retaining them and receiving the death benefits when the victim dies. (Compl. ¶¶ 1-3, 6-7, 14, 42-95.) As a result of the MCC Defendants' alleged ill-gotten gains, the MCC Defendants are able to continue to cause harm to other unsuspecting seniors like Mrs. Reiter. (*Id.*) Thus, Plaintiffs have satisfied the requirements of Section 1962(a).

Similarly, Plaintiffs have adequately alleged a violation of Section 1962(b), which provides that it is "unlawful for any person through a pattern of racketeering activity . . . to acquire or maintain, directly or indirectly, any interest in or control of any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce." "Where subsection (a) prohibits the use of money derived from racketeering to acquire an interest in an enterprise, subsection (b) prohibits engaging in racketeering activity to acquire or maintain an interest in or control of an enterprise." *Schreiber Distrib. Co. v. Serv-Well Furniture Co., Inc.*, 806 F.2d 1393, 1398 (9th Cir. 1986). In *Schrieber*, the Ninth Circuit held that the district court's dismissal of RICO claims under Section 1962 (b) was in error when plaintiffs alleged that the defendants engaged in predicate acts of racketeering, that defendants received income from the pattern of racketeering, and that defendants used that income in their operations. *Id.* at 1398. Likewise, Plaintiffs here have sufficiently alleged that the MCC Defendants engaged in predicate acts of racketeering, *see Section 1.1, supra*, that the MCC Defendants received and controlled income generated from the premium financing scheme, (Compl. ¶¶ 42, 45, 47-55), and that the MCC Defendants use this income to maintain and operate the ongoing scheme, (Compl. ¶ 129). Accordingly, the MCC Defendants' argument that Plaintiffs have not alleged the requisite injury to sustain their claims under §§ 1962(a) and (b) fails.

**1.3     RICO Enterprise**

The NWA Defendants argue that Plaintiffs have failed to adequately allege a RICO enterprise and failed to allege NWA's connection with any enterprise. The definition of an "enterprise" under RICO is "not very demanding." *Odom*, 486 F.3d at 548. "It is undisputed that a corporation can be an 'individual' for purposes of an associated-in-fact enterprise." *Id.* "[A]n associated-in-fact enterprise under RICO does not require any particular organizational structure, separate or otherwise." *Id.* at 551. RICO liability is not limited to those with "primary responsibility for the enterprise's affairs." *Reves v. Ernst & Young*, 507 U.S. 170, 179 (1993).

10

Plaintiffs allege, among other things, that: (1) Shelbaugh and representatives from NWA traveled to Osprey, Florida in April or May of 2005 to meet with Mrs. Reiter to discuss selling her a life insurance policy financed with MCC's nonrecourse premium financing, and secured Mrs. Reiter's agreement to the financing, (Compl. ¶¶ 63- 65); (2) Shelbaugh was identified as the insurance agent for the sale of the Jefferson Pilot Policy, (Compl. ¶70); (3) Shelbaugh received a commission paid by the insurer who issued the Jefferson Pilot Policy, (Compl. ¶ 74); (4) Rumson Capital, Shelbaugh and NWA brokered the sale of the Jefferson Pilot life insurance policy to Peachtree, (Compl. ¶85). Plaintiffs have sufficiently alleged that the NWA Defendants were integral participants in the MCC Enterprise, so the NWA Defendants' argument fails.

**1.4    Conclusion**

Plaintiffs have alleged sufficient facts to state a claim for RICO violations. The Moving Defendants' Motions are DENIED as to the first claim for relief.

**2.    PLAINTIFFS' SECOND CLAIM, FOR VIOLATION OF THE UCL**

Plaintiffs' second claim is for violation of the UCL. California Unfair Competition Law ("UCL") makes unlawful business practices actionable. Cal. Bus. & Prof. Code § 17200, *et seq*. "The UCL defines unfair competition as any unlawful, unfair or fraudulent business practice." *Lazar v. Hertz Corp.*, 69 Cal. App. 4th 1494, 1505 (1999). To state a claim for violations of the UCL, a plaintiff must allege that the plaintiff has "suffered injury in fact and has lost money or property" through a defendant's act. Cal. Bus. & Prof. Code § 17204. An injury in fact can be established by showing an injury to "a tangible property interest, such as money." *Troyk v. Farmers Group,Inc.,* 171 Cal. App. 4th 1305, 1347 (2009).

As detailed in the analysis of the RICO claims, Section 1.1, *supra*, Plaintiffs have met their burden of pleading fraudulent practices. The NWA Defendants argue that "the Complaint is far too vague as to the alleged injury in fact." (NWA Brief 13:20.) But Plaintiffs pled

detailed allegations of their injuries, including, among other things, the lost opportunity to sell the Jefferson Pilot Policy at a profit of at least $1,100,00, the payment of unlawful interest, and the payment of improper commissions. (Compl. ¶¶92, 157.) Plaintiffs have adequately alleged a claim for violation of the UCL, so the Moving Defendants' Motions are DENIED as to the second claim for relief.

### 3. PLAINTIFFS THIRD CLAIM, FOR BREACH OF FIDUCIARY DUTY

Plaintiffs' third claim is for breach of fiduciary duty. A claim for breach of fiduciary duty is established through a showing of the existence of a fiduciary relationship, a breach of that relationship, and damages proximately caused by that breach. *Estate of Migliaccio v. Midland Nat'l Life Ins. Co.*, 436 F. Supp. 2d 1095, 1107 (C.D. Cal. 2006). Both the NWA Defendants and the MCC Defendants argue that Plaintiffs have failed to establish the existence of a fiduciary relationship and thus cannot establish a breach of fiduciary duty.

The NWA Defendants argue that the relationship between an insurance agent and insured does not give rise to a fiduciary duty. The Complaint identifies the NWA Defendants as brokering the sale of the Jefferson Pilot Policy to the Reiter Trust and further alleges that Shelbaugh was, at all relevant times, an agent of NWA. (Compl. ¶¶ 5, 27, 28, 59.) In *Shemano-Krupp v. Mut. of Omaha Ins. Co.*, No. C05-04693 JSW, 2008 WL 4279668, at *7 (N.D. Cal. Sept. 15, 2008), the court denied summary judgment on the issue of a fiduciary relationship between an insurance agent and the insured. The *Shemano-Krupp* court cited a decision in which the court held that "where an insurance agent was an expert in the field and the insured was a layman, there was a fiduciary relationship between the insurance agent and the insured." *Id*. at *7 (citing *Steadman v. McConnell*, 149 Cal. App. 2d 334, 338 (1957)). The Court finds that Plaintiffs have pled sufficient facts to allow the Court to draw a reasonable inference that there was a fiduciary relationship between the NWA Defendants and Plaintiffs.

The MCC Defendants correctly argue that the lender-borrower relationship cannot give rise to a fiduciary duty. But Plaintiffs alleged that the MCC Defendants were far more than mere

lenders. The Complaint alleges that the MCC Defendants were at the heart of the scheme to defraud Plaintiffs. (*See*, *e.g.*, Compl. ¶¶ 6, 17, 19, 20, 24, 25, 42, 59, 66, 72, 80, 87.) These allegations are sufficient to give rise to a reasonable inference of a fiduciary relationship at the pleading stage. The Motions are therefore DENIED as to Plaintiffs' third claim for relief.

4.  **PLAINTIFFS' FOURTH CLAIM, FOR AIDING AND ABETTING A BREACH OF FIDUCIARY DUTY**

Plaintiffs' fourth claim is for aiding and abetting a breach of fiduciary duty. Under California law, a person may be held liable for aiding and abetting a tort if the person 1) "knows the other's conduct constitutes a breach" of a fiduciary duty; 2) "gives substantial assistance or encouragement" to the party committing the breach and 3) "had actual knowledge of a specific primary violation" by the breaching party. *Casey v. U.S. Bank Nat. Ass'n.*, 127 Cal. App. 4th 1138, 1144, 1148 (2005) (citing *Saunders v. Superior Court*, 27 Cal. App. 4th 832, 846 (1994)). General allegations "that defendants had actual knowledge of a specific primary violation" are sufficient to plead liability for aiding and abetting. *Casey*, 127 Cal. App. 4th at 1148 (citing *Neilson v. Union Bank of California, N.A.*, 290 F. Supp. 2d 1101, 1120 (C.D. Cal. 2003)).

"As long as the third parties were acting to further their own individual economic interests, they may be liable for actively participating in a fiduciary's breach of his or her trust." *City of Atascadero v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 68 Cal. App. 4th 445, 467 (1998).

The Complaint alleges that Swope and Doten breached their fiduciary duties by: (1) determining that it was in the best interest of the Reiter Trust and its beneficiary to use MCC to finance the premium on Mrs. Reiter's life insurance policy even though the loan's interest rates and fees harmed the well-being of the Reiter Trust, (Compl. ¶¶ 72, 76); (2) failing to preserve Trust property by seeking to sell the policy at the time it was most valuable rather than considering and suggesting means to preserve the policy for the benefit of the Reiter Trust and its beneficiaries, (Compl. ¶¶ 84, 85); (3) failing to seek the permission of the Reiter Trust's

beneficiary before entering into the transactions and failing even to disclose the transactions to the beneficiary, (Compl. ¶¶ 78,84); and (4) taking large commissions and/or fees, to the detriment of the Trust and its beneficiary, (Compl. ¶86). Plaintiffs also allege that each of the moving parties had knowledge of Swope and Doten's breaches of their fiduciary duties and provided substantial assistance to Swope and Doten. (Compl. ¶¶ 19, 24, 59, 75, 80, 87.) These allegations are sufficient to state a claim for aiding and abetting breach of fiduciary duty. The Moving Defendants' Motions are DENIED as to Plaintiffs' fourth claim for relief.

**5. PLAINTIFFS' FIFTH AND SEVENTH CLAIMS, SOUNDING IN FRAUD**

Plaintiffs' fifth claim is for fraudulent concealment, and Plaintiffs' seventh claim is for fraudulent inducement, misrepresentations, and common law fraud. The Moving Defendants argue that Plaintiffs' fraud claims against them should be dismissed because Plaintiffs' fraud allegations do not satisfy the heightened pleading requirements of Rule 9(b).

Defendants' argument fails. Plaintiffs have pled sufficient facts to put Defendants on "notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Bly-Magee*, 236 F. 3d at 1019 (citing *Neubronner v. Milken*, 6 F.3d 666 at 672). Further, the facts alleged by Plaintiff, as detailed throughout this Order, can lead to an inference that the Moving Defendants never intended to comply with the contract. The Moving Defendants' Motions are DENIED as to the fifth and seventh claims for relief.

**6. PLAINTIFFS' SIXTH CLAIM FOR RELIEF, FOR UNJUST ENRICHMENT**

Plaintiffs' sixth claim is for unjust enrichment. "A person is unjustly enriched if the retention of the benefit would be unjust." *Earhart v. William Low Co.*, 25 Cal.3d 503, 518 (1979) (quoting Restatement (First) of Restitution § 1, cmt. a (1937)). The moving Defendants argue that the contract between Plaintiffs and Defendants precludes recovery under unjust

1 enrichment.  But "restitution may be awarded in lieu of breach of contract damages when the
2 parties had an express contract, but it was procured by fraud or is unenforceable or ineffective
3 for some reason."  *McBride v. Boughton*, 123 Cal. App. 4th 379, 388 (2004).  Here, Plaintiffs
4 have alleged that the contract was procured by fraud.  Plaintiffs have not asserted a breach of
5 contract claim, instead choosing to seek restitution.  Accordingly, the contract between Plaintiffs
6 and Defendants does not bar Plaintiffs' claim for unjust enrichment.  The moving Defendants'
7 Motion is DENIED as to Plaintiffs' sixth claim for relief.

9 **7.      PLAINTIFFS' EIGHTH CLAIM, FOR VIOLATION OF FLORIDA USURY LAW**

11        Plaintiffs' eighth claim is for damages under Florida usury law.  The moving Defendants
12 argue that Plaintiffs' usury claim is barred by the California choice of law clause in the note.
13 California courts enforce choice of law provisions where: (1) the chosen state has a substantial
14 relationship to the parties or transaction, or there is any other reasonable basis for the parties'
15 choice of law; and (2) the chosen state's law is not contrary to a fundamental policy of
16 California.  *Nedlloyed Lines B.V. v. Superior Court*, 3 Cal.4th 459, 466 (1992).  Here, California
17 has a substantial relationship to the parties and there is a reasonable basis for the selection of
18 California law because Defendant MCC is incorporated in and has its principal place of business
19 in California.  *See Trust One Mortgage Corp. v. Invest Am. Mortgage Corp.*, 134 Cal. App. 4th
20 1302, 1309 (2005) (the choice of law provision was reasonable where one of the parties lived in
21 the chosen state.).  Further, the chosen state's law (California) is clearly not contrary to a
22 fundamental policy of California.  *See Consul Ltd v. Solide Enters., Inc.*, 802 F.2d 1143, 1147
23 (9th Cir. 1986) ("California obviously would not violate its own public policy by applying its
24 own law.").  In fact, Plaintiffs plead multiple claims based on California law, so they recognize
25 that California law provides remedies for the alleged wrongdoing by Defendants.  Further, the
26 Court is satisfied that the deficiencies of this claim cannot be cured by amendment, *Jackson*, 353
27 F.3d at 758, so the motion is GRANTED without leave to amend as to Plaintiffs' claim for usury
28 under Florida law.

**DISPOSITION**

The Motions to Dismiss are GRANTED without leave to amend as to Plaintiffs' eighth claim, for violation of Florida Usury law.   The Motions are DENIED as to all other claims.

IT IS SO ORDERED.

DATED: November 23, 2009

                                                                    _____
                                                                    Andrew J. Guilford
                                                                    United States District Judge