

# UNITED  STATES  DISTRICT  COURT

# FOR  THE  CENTRAL  DISTRICT  OF  CALIFORNIA

| | |
|---|---|
| PATRICIA C. REITER, et al., ) | CASE NO. SACV 09-0811 AG (RNBx) |
| ) | |
| Plaintiffs, ) | ORDER GRANTING IN PART AND |
| ) | DENYING IN PART MOTIONS TO |
| v. ) | DISMISS |
| ) | |
| MUTUAL CREDIT CORPORATION, ) | |
| et al., ) | |
| ) | |
| Defendants. ) | |
| ) | |
| ) | |
| _____ ) | |

Plaintiffs allege an insurance scheme to exploit wealthy elderly people, conceived and implemented by a tangled web of defendants.  Before the Court is a motion to dismiss ("Motion"), filed by over ten defendants and joined by several more.  Defendants Mutual Credit Corporation, Spurling Group, LLC, Spurling Group II, LLC, Michael Brown, Anthony Jacobson, KBC Financial Holdings, Inc., KBC Financial Products USA, Inc., Pacifica Group, LLC, Mapleridge Financial, Northbridge Insurance Agency, the Brown Family Trust, the Anthony John Jacobson Trust and NorthStar Life Services filed the Motion that is now before the Court.  (Dkt. # 135.)  Defendant David Doten joined the Motion.  (Dkt. # 136.)  Defendants

Richard L. Swope and Swope Lamberson, P.A. joined the Motion.  (Dkt. # 137.)  Defendants
XE Capital Management, LLC, XE Capital Advisors, LLC, XE Life, LLC, Randall Kau, and
David Doten (again) joined the Motion.  (Dkt. # 157.)  Defendants James A. Adams and
Anthony Joseph Meade, III, filed their own motion to dismiss, stating that they joined the
Motion.  (Dkt. # 162.)  Except where necessary to specify individual defendants or groups of
defendants, the Court refers to the moving and joining defendants as "Defendants."  Plaintiffs
Patricia C. Reiter, et al. ("Plaintiffs") opposed the Motion.  The Court GRANTS in part and
DENIES in part the Motion.

**BACKGROUND**

Plaintiffs allege eight claims, numbered as follows:

(1)     violations of civil Racketeer Influenced and Corrupt Organizations Act ("RICO"), against
        all Defendants;

(2)     violation of California Business and Professions Code § 17200 et seq., against all
        Defendants;

(3)     breach of fiduciary duty, against all Defendants;

(4)     aiding and abetting breach of fiduciary duty, against all Defendants;

(5)     fraudulent concealment, California Civil Code § 1710, et seq., against all Defendants;

(6)     unjust enrichment and imposition of constructive trust, against all Defendants;

(7)     fraudulent inducement/misrepresentation/common law fraud, against all Defendants; and

(8)     usury, under California law, against MCC Defendants, Doten, Spurling, Spurling II, and
        the XE Entities.

Obviously, the Plaintiffs have chosen to complicate this case with many Defendants and
with many claims for relief, some of which require creativity in applying them to the Defendants
and facts of this case.  At oral argument, the Court noted that Plaintiffs' case might be enhanced
through *simplification*, and that all parties should consider settlement before expenses spin out of

control.  Facing the task now before it at this time, the Court issues this Order based on a thorough review of all the papers and arguments submitted on the many issues and parties involved.

## 1.    PROCEDURAL HISTORY

In July 2009, Plaintiffs filed an initial complaint ("Initial Complaint") against Defendants Mutual Credit Corporation ("MCC"), Spurling Group LLC, Spurling Group II LLC, Michael Brown, Anthony Jacobson, David Doten, Rumson Capital L.P., National Wealth Advisors, Richard Swope, Swope Lamberson P.A., Todd Shelbaugh, and DOES 1 to 100.  The Initial Complaint alleged the same eight claims as the Amended Complaint, except that the eighth claim, for usury, was under Florida law.  All of those defendants other than Rumson Capital, Richard Swope, and Swope Lamberson either filed or joined a motion to dismiss.  The Court denied those motions to dismiss as to claims one through seven, and granted the motions without leave to amend as to claim eight, for usury under Florida law.  (Order Granting in Part and Denying in Part Defendants' Motion to Dismiss ("Dismissal Motion"), Dkt. # 62.)

The parties then undertook some discovery, and Plaintiff sought leave to file an amended complaint ("Amended Complaint" or "AC").  The Court granted leave to file an Amended Complaint, which is now the operative complaint.  The Amended Complaint alleges class action claims and added a slew of new defendants, some of whom are moving defendants here.

The Court will be guided by the law-of-the-case doctrine in deciding this Motion.  "The law of the case doctrine precludes a court from reconsidering an issue previously decided by the same court, or a higher court, in the same case." *Johnson v. Executive Protective Agency K-9 & Investigative Services, Inc.*, No. 07cv0570 JAH (AJB), 2011 WL 666877, at *2 (S.D. Cal. Feb. 17, 2011).  A court may depart from the previous decision if (1) the first decision was clearly erroneous; (2) an intervening change in the law has occurred; (3) the evidence on remand is substantially different; (4) other changed circumstances exist; or (5) a manifest injustice would otherwise result. *United States v. Alexander*, 106 F.3d 874 (9th Cir. 1997).  But, "[t]he effect of

the [law-of-the-case] doctrine is not dispositive, particularly when a court is reconsidering its

own judgment, for the law of the case 'directs a court's discretion, it does not limit the tribunal's

power.'" *Mendenhall v. Nat'l Transp. Safety Bd.*, 213 F.3d 464, 469 (9th Cir. 2000) (quoting

*Arizona v. California*, 460 U.S. 605, 618 (1983)).

## 2.     FACTUAL BACKGROUND

The following facts come from the Amended Complaint, and for purposes of this Motion,

the Court assumes them to be true.

This case arises from "a deceptive and predatory life insurance premium financing and

investment transaction and scheme implemented by the defendants that preys upon seniors."

(AC ¶ 1.)  Defendants perpetrated this scheme upon Plaintiff Patricia Reiter and many other

seniors.  (*Id.* ¶ 2.)  Plaintiffs allege that while non-recourse premium financed life insurance

policies, when structured and used properly, serve legitimate purposes, the defendants here

"acted not to provide a legitimate financial and estate planning tool for Mrs. Reiter, but to

effectively manipulate her, as they did other seniors . . . ."  (*Id.* ¶ 3.)

Plaintiff alleges the scheme as follows:

> "MCC and its co-conspirators' intent and practice was and is to
> structure and operate MCC's premium financing program in such a
> manner as to identify vulnerable elderly individuals of relatively
> high insurance value; to coerce or fraudulently induce these elderly
> borrowers into entering MCC's premium financing program; to
> coerce or fraudulently induce them into apply for/and or obtaining a
> life insurance policy funded by MCC's premium financing program;
> to, as part of the program, assign away their valuable insurable
> interest for far less than its market value; and, ultimately, to assess
> unlawful and unconscionable interest and fees in an effort to deprive
> the victims of their interest in the life insurance policies obtained."
> (*Id.* ¶ 92.)

Under their scheme, defendants induced Mrs. Reiter to establish the Patricia Reiter

Irrevocable Insurance Trust U/A/D May 6, 2005 (the "Reiter Trust").  (*Id.* ¶ 4.)  The Reiter Trust

was an irrevocable trust established under the laws of California.  (*Id.*)  As an inducement to

participate in the defendants' scheme, the defendants initially promised Mrs. Reiter a payment of

4

1   $270,000.  (*Id.* ¶ 5.)  Mrs. Reiter never received that money.  (*Id.*)  Once the Reiter Trust was
2   formed, the trustees David Doten and Richard Swope entered into a "purported nonrecourse
3   premium financing agreement with defendant [MCC]."  (*Id.* ¶ 6.)  MCC loaned $563,800 to the
4   Reiter Trust (the "Initial Loan"), which was used to purchase a life insurance policy on Plaintiff
5   Patricia Reiter from Jefferson Pilot Life Insurance, Co. with a death benefit of $9 million
6   ("Jefferson Pilot Policy").  (*Id.*)  The death benefit was pledged as collateral for the loan from
7   MCC.  (*Id.*)  Some defendants received "substantial commissions or payments associated with
8   the acquisition of the Jefferson Pilot Policy."  (*Id.*)

9          The Initial Loan from MCC was obtained under unfavorable terms.  (*Id.* ¶ 7.) The Initial
10  Loan required payment of fixed interest on the loan amount equal to 10% per annum, an
11  origination fee of over $28,000, and purported "Contingent Interest" of up to $900,000 (10% of
12  the face value of the Jefferson Pilot Policy).  (*Id.* ¶ 174.)  The Initial Loan was "a balloon note,
13  which provided for payment of all principal and interest, including a purported 'contingent
14  interest' element [after two years]."  (*Id.* ¶ 7.)  The proceeds of the Initial Loan were used to pay
15  the Jefferson Pilot Policy premiums for two years, and provided an additional $180,000 to the
16  Reiter Trust.  (*Id.* ¶ 9.)

17         After Plaintiff Patricia Reiter had held the Policy for approximately two years, certain
18  Defendants on behalf of Plaintiffs "sold the Jefferson Pilot Policy to Peachtree Life Settlement"
19  for $2,700,000.  (*Id.* ¶ 14.)  Some Defendants received huge commissions on the sale to
20  Peachtree.  (*Id.*)  Some of this money went to Doten, Shelbaugh, Swope and possibly other
21  defendants (*id.* ¶ 187), some went to Spurling II (*id.* ¶ 188), and some went to Christopher
22  Reiter, who was the indirect beneficiary of the Jefferson Pilot Policy (*id.* ¶ 191).  And "[as] a
23  result of [defendants'] concerted and conspiratorial actions and undisclosed scheme, an unrelated
24  third party and complete stranger to the Reiter family now holds the right to receive the proceeds
25  of a $9,000,000 policy upon Mrs. Reiter's death."  (*Id.* ¶ 17.)

5

## LEGAL STANDARD

A court should dismiss a complaint when its allegations fail to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  A complaint need only include "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2). "'[D]etailed factual allegations' are not required."  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1940 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 555 (2007) (stating that "a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations")).  The Court must accept as true all factual allegations in the complaint and must draw all reasonable inferences from those allegations, construing the complaint in the light most favorable to the plaintiff.  *Pollard v. Geo Group, Inc.*, 607 F.3d 583, 585 n.3 (9th Cir. 2010).

But the complaint must allege "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 570).  "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 129 S. Ct at 1940 (citing *Twombly*, 550 U.S. at 556).  A court should not accept "threadbare recitals of a cause of action's elements, supported by mere conclusory statements," *id.*, or "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences," *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).  The Ninth Circuit recently addressed post-*Iqbal* pleading standards in *Starr v. Baca*, — F.3d —, 2011 WL 2988827, at *14 (9th Cir. July 25, 2011).  The *Starr* court stated, "First, to be entitled to the presumption of truth, allegations in a complaint or counterclaim may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively.  Second, the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation."  "A district court may deny a plaintiff leave to amend if it determines that allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency . . . or if the

plaintiff had several opportunities to amend its complaint and repeatedly failed to cure deficiencies." *Telesaurus VPC, LLC v. Power*, 623 F.3d at 998, 1003 (9th Cir. 2010); see also *Jackson v. Carey*, 353 F.3d 750, 758 (9th Cir. 2003).

Fraud claims include "a false representation, knowledge of its falsity, intent to defraud, justifiable reliance, and damages." *Moore v. Brewster*, 96 F.3d 1240, 1245 (9th Cir. 1996) (superceded by statute on other grounds). These claims must meet the heightened pleading standard of Federal Rule of Civil Procedure 9(b), which requires enough specificity to give a defendant notice of the particular misconduct to be able to defend against the charge. *Bly-Magee v. California*, 236 F.3d 1014, 1019 (9th Cir. 2001) (citation omitted). To satisfy this specificity requirement, "the who, what, when, where, and how" of the misconduct must be alleged. *Cooper v. Pickett,* 137 F.3d 616, 627 (9th Cir. 1997) (internal quotation marks omitted). Thus, factual allegations must include "the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations." *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007). Where a defendant is a business entity and not a person, the plaintiff must "allege the names of the persons who made the allegedly fraudulent representations, their authority to speak, to whom they spoke, what they said or wrote, and when it was said or written." *Tarmann v. State Farm Mutual Auto Ins. Co.*, 2 Cal. App. 4th 153, 157 (1991).

Rule 9(b) serves many purposes. One is to "furnish the defendant with certain definite charges which can be intelligently met." *Kincade v. Trojan Express, LLC*, No. SACV 08-1362 AG (ANx), 2009 WL 799390, at *2 (C.D. Cal. Mar. 23, 2009). Other purposes include "to deter the filing of complaints as a pretext for the discovery of unknown wrongs, to protect [defendants] from the harm that comes from being subject to fraud charges, and to prohibit plaintiffs from unilaterally imposing upon the court, the parties, and society enormous social and economic costs absent some factual basis." *Anderson v. Clow* (*In re Stac Elecs. Sec. Litig.*), 89 F.3d 1399, 1405 (9th Cir. 1996) (internal quotations omitted); *see Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985).

**ANALYSIS**

Because different Defendants have varying history with this litigation, the Court groups them by category and then analyzes the Motion as to each group.

## 1.    OLD DEFENDANTS, NOW MOVING TO DISMISS, WHO MOVED TO DISMISS THE INITIAL COMPLAINT

There are six defendants who moved to dismiss the Initial Complaint who now move to dismiss the Amended Complaint. The Court denied their motion to dismiss the Initial Complaint, except the Court granted the dismissal of claim eight for usury under Florida law. Those defendants are MCC, Spurling, Spurling II, Brown, Jacobson, and Doten (together, "Old Denied Defendants"). Claims One through Seven in the Amended Complaint are the same types of claims as in the Initial Complaint. Claim Eight in the Amended Complaint is now for usury under California law.

### 1.1    Claims One Through Seven

Under the law of the case doctrine, the Court finds that Claims One through Seven in the Amended Complaint are sufficiently stated against the Old Denied Defendants. As noted, Claims One through Seven were the same types of claims in the Initial Complaint as they are in the Amended Complaint. A key purpose of Rule 8(a) and Rule 9(b) is to ensure that a defendant has adequate notice of the claims against it. But the Court already found, implicitly and explicitly, that the Old Denied Defendants had sufficient notice of the basis for Claims One through Seven. If anything, the Amended Complaint provides more allegations about them than the Initial Complaint, further satisfying Plaintiffs' pleading requirements as to Claims One through Seven against the Old Denied Defendants.

The Old Denied Defendants argue that Ninth Circuit authority has changed since the Court dismissed the RICO claim in the Initial Complaint. This is incorrect. The "new" case cited by the Old Denied Defendants, *Sanford v. MemberWorks, Inc.*, 625 F.3d 550, 558 (9th Cir.

1    2010), sets forth effectively the same standard quoted by the Court in the Dismissal Order.  *Cf.*

2    *Odom v. Microsoft Corp.*, 486 F.3d 541, 553-54 (9th Cir. 2007) (en banc).  Thus, the Court

3    DENIES the Motion to Dismiss Claims One through Seven as to the Old Denied Defendants.

4

5                    **1.2      Claim Eight: Usury Under California Law**

6

7            As noted, the Court granted the motion to dismiss the initial claim eight, for usury.  The

8    Court found that "California law provides remedies for the alleged wrongdoing by Defendants"

9    because of a California choice-of-law provision in the underlying note.  (Dismissal Order at

10   15:25.)  Thus the Court previously concluded that Plaintiffs could not bring a claim under

11   Florida law and dismissed the claim without leave to amend.

12           Plaintiffs have added a new Claim Eight to allege usury under California law.  The Court

13   now addresses whether the claim can survive this Motion.

14           In their opposition to the motion to dismiss the Initial Complaint, Plaintiffs explained why

15   they chose to bring their initial usury claim under Florida law, instead of under California law:

16   "At bottom, the MCC Predatory Enterprise was designed to take advantage of a narrow

17   exception under California law, protecting the MCC Defendants by allowing them to charge

18   what is, in other jurisdictions including Florida, usurious interest."  (Dkt. # 58, p. 41.)

19   Defendants now argue that Plaintiffs have admitted that the alleged loan is not usurious under

20   California law.  (Motion at 12:2-4.)  Plaintiffs do not address this point in their written

21   Opposition to this Motion, but at oral argument Plaintiffs contended that this statement meant

22   only that Defendants tried – but failed – to avoid California usury law.

23           The Court considers Plaintiffs' initial statement about California and Florida usury law to

24   be a concession that their claim under California law fails, which is further confirmed by the

25   failure to address this point in their Opposition.  While the amended claim is a creative attempt

26   to assert a usury violation, the Court cannot ignore Plaintiffs' earlier statement, particularly in a

27   case like this with abundant claims and defendants.  The Court GRANTS the Motion to Dismiss

28   Claim Eight as to the Old Denied Defendants.

## 2.   OLD DEFENDANTS, NOW MOVING TO DISMISS, WHO DID NOT MOVE TO DISMISS THE INITIAL COMPLAINT

Defendants Richard Swope and Swope Lamberson, P.A. (together, the "Swope Defendants") were parties to the Initial Complaint but did not move to dismiss the Initial Complaint. The Swope Defendants were the only defendants in the Initial Complaint who did not move to dismiss. The Swope Defendants have now joined the Motion to dismiss the Amended Complaint. They argue simply that they "join the Moving Defendants herewith because the grounds for dismissal stated in the Motion, other than the grounds concerning the usury claim which is not asserted against the Swope Defendants, apply equally to the Swope Defendants. In the event Plaintiffs' claims against the Moving Defendants are dismissed, the claims against the Swope Defendants should be dismissed as well." (Dkt. # 137.) This is unhelpful to the Court. The Swope Defendants are in a different procedural position from many other Defendants, since they were parties to the Initial Complaint, but they don't address that point.

While there is no "law of the case" that directly applies to the Swope Defendants, the Court's analysis in the Dismissal Order is relevant to them as well because they were frequently-mentioned parties to the Initial Complaint. The Swope Defendants have presented no argument as to why the Court shouldn't apply the reasoning of the Dismissal Order to them now. Having reviewed the Dismissal Order, the Initial Complaint, and the Amended Complaint, the Court concludes that the reasoning of the Dismissal Order applies to the Swope Defendants. The Initial Complaint contained adequate allegations against the Swope Defendants to state Claims One through Seven in the Initial Complaint. Because the Amended Complaint may have even more allegations against the Swope Defendants than did the Initial Complaint, the principles of "law of the case" impel the Court to deny the Motion as to the Swope Defendants.

Accordingly, the Court DENIES the Motion as to the Swope Defendants as to Claims One through Seven. As noted, Claim Eight is not asserted against the Swope Defendants.

### 3.    NEW DEFENDANTS WHO NOW MOVE TO DISMISS THE AMENDED COMPLAINT

In addition to the Old Denied Defendants and the Swope Defendants, there are also multiple defendants, added to the Amended Complaint, who are now moving to dismiss.  These fourteen "New Moving Defendants" are as follows: KBC Financial Holdings, KBC Financial Products USA, Pacifica Group, Mapleridge Financial, Northbridge Insurance Agency, the Brown Family Trust, the Anthony John Jacobson Trust, NorthStar Life Services, XE Capital Management ("XE Capital"), XE Capital Advisors, XE Life, Randall Kau, James A. Adams, and Anthony Joseph Meade, III.  (As a sign of the complexity of the pleadings, there are more than ten other new defendants in the Amended Complaint who are not party to this Motion.)

The allegations about the various New Moving Defendants vary from exceedingly sparse – for example, James A. Adams is specifically mentioned only twice in the Amended Complaint (AC ¶¶ 27, 33) – to relatively more specific – for example, Plaintiffs allege that XE Capital initially capitalized MCC (AC ¶ 99) and that XE Capital received money related to the premium financing transactions (AC ¶ 126).

The Court now considers whether to dismiss Claims One through Eight against the New Moving Defendants.

### 3.1    Claim One: RICO

To plead a RICO claim adequately, a plaintiff must allege: (1) conduct (2) of an enterprise (3) through a pattern of (4) racketeering activity.  *Howard v. America Online, Inc*., 208 F.3d 741, 746 (9th Cir. 2000).

Plaintiffs allege four categories of predicate acts: collection of a usurious debt, illegal gaming, violation of federal mail fraud statutes, and violation of federal wire fraud statutes.  The Court will address each of the alleged predicate acts.  Because the four alleged predicate acts fail to establish RICO liability for the New Moving Defendants, the Court does not consider the

other elements of a RICO claim.

### 3.1.1   Collection of a Usurious Debt

Under 18 U.S.C. § 1961(6), an unlawful debt includes a debt that is unenforceable because of the law related to usury.  Earlier in this Order, the Court granted the Motion as to the usury claim against the Old Denied Defendants.  The same admission that torpedoed that claim against the Old Denied Defendants also applies here.  Further, regarding the New Moving Defendants, the usury claim is only asserted against the "XE Entities" and thus likely could not be a predicate act for the other New Moving Defendants.  Based on these considerations, the Court determines that Plaintiffs have failed to sufficiently allege that this predicate act could serve as the basis for a RICO claim.

### 3.1.2   Illegal Gaming

Under 18 U.S.C. § 1961(6), an unlawful debt also includes a debt that is incurred in a gambling activity which violates the law.  Plaintiffs specifically identify two California statutes that were allegedly violated by the scheme. (AC ¶ 230.)  Plaintiffs allege that the MCC loan to Plaintiffs violated California Penal Code § 330 and California Insurance Code § 252 because it was designed "to allow the defendants to identify those individuals in advance on whom they wished to speculate and enter into a percentage game or game of chance concerning their mortality or life expectancy."  (*Id.*)  Plaintiffs also focus in their Opposition on illegal gaming under federal common law.  The Court first considers the two California statutes, then turns to the federal common law arguments.

Plaintiffs are struggling mightily to squeeze a square peg into a round hole.  It just doesn't work to apply the California statutes here.  First, Section 330 applies to casino games, as correctly argued by Defendants.  That section makes illegal "any game of faro, monte, roulette, lansquenet, rouge et noire, rondo, tan, fan-tan, seven-and-a-half, twenty-one, hokey-pokey, or

1   any banking or percentage game played with cards, dice, or any device, for money, checks,

2   credit, or other representative of value." Plaintiffs argue that "[t]he lack of any cases applying

3   Section 330 in this particular context does not lead to the conclusion that this provision is

4   inapplicable as a matter of law." (Opposition at 19:5-6.) While the lack of cases may not be

5   conclusive, the clear language of the statute is conclusive. The general premium financing done

6   by MCC and other Defendants is obviously not a game of faro, monte, roulette, lansquenet, or

7   hokey-pokey, or a game like that.

8         Second, Section 252 is similarly unavailing here. Section 252 states that "[a] policy

9   executed by way of gaming or wagering, is void." As Defendants point out, on its face, "the

10  statute does not apply to premium financing and only contemplates rescission of life insurance

11  policies by an insurer." (Motion at 17:19-20.) Section 252 addresses the requirement that a

12  person who takes out a life insurance policy on the life of another must have an insurable interest

13  in that person's life. *Jimenez v. Protective Life Ins. Co.*, 8 Cal. App. 4th 528, 536 (1992).

14  "Otherwise, the policy is a mere wager on the life of the person insured, and the policy is void as

15  against public policy." *Id*. But both Plaintiff Patricia Reiter and her son, Plaintiff Christopher

16  Reiter, had an insurable interest in the like of Plaintiff Patricia Reiter when they obtained the

17  Jefferson Pilot Policy. Plaintiffs' reliance in the Opposition on Section 10110.1 of the California

18  Insurance Code is misplaced. Section 10110.1 states that trusts can violate the "insurable

19  interest" laws when they are used to apply for life insurance policies where a beneficiary of the

20  trust lacks an insurable interest in the life of the insured. But here, the indirect beneficiary of the

21  life insurance policy was Plaintiff Christopher Reiter, who had an insurable interest in his

22  mother's life. Plaintiffs later sold the relevant life insurance policy to a third-party who would

23  not have been able to take out the policy in the first place, but this doesn't make it void.

24       As noted, Plaintiffs also contend that the illegal gaming predicate act is also based on

25  general notions of federal common law. Plaintiffs argue that "even if an insurable interest might

26  exist sufficient to acquire an insurance policy, it could still be illegal gaming if it [were] 'done

27  by way of cover for a wager policy,'" citing *Connecticut Mutual Life Insurance Co. v. Schaefer*,

28  94 U.S. 457, 460 (1876). At least one case has defined a wager policy: "If a beneficiary insures

1  the life of a person when the beneficiary has no insurable interest, the policy is referred to as a

2  wager life insurance policy." *Estate of Bean v. Hazel*, 972 S.W.2d 290, 291 (Mo. 1998).  Thus,

3  there may be "cover" for a wager policy where the initial beneficiary has an insurable interest

4  but the intent is to transfer the benefit to someone without an insurable interest.

5          Here, Plaintiffs have acknowledged that, from the time the life insurance policy was first

6  taken until it was sold approximately two years later, the beneficiary did hold an insurable

7  interest.  Plaintiffs allege that "[i]n furtherance of the scheme, [the designated beneficiary] was

8  required to be someone who *enjoyed an insurable interest* in Mrs. Reiter's life."  (AC ¶ 151,

9  emphasis added.)  While the ultimate holders of the Jefferson Pilot Policy – namely Peachtree –

10 did not have an insurable interest, Christopher Reiter did have such an interest.  Thus the issue is

11 whether Plaintiffs have alleged that this was all done as "cover" for what should be deemed a

12 wager policy.

13         In one of the very few cases to analyze this issue in the last 70 years, a federal court found

14 a plausible claim for a wager policy under New York law where the plaintiff sold his life

15 insurance policy to a third-party within six days of acquiring the policy and before he paid any

16 premiums.  *Life Product Clearing, LLC v. Angel*, 530 F. Supp. 2d 646, 647 (S.D.N.Y. 2008).

17 The *Life Product* court noted that "[c]ourts consider factors such as whether the insured paid

18 premiums and the length of time the insured held the policy before assigning it when deciding

19 whether an arrangement is simply a sham transaction designed to evade the insurable interest

20 rule. . . ."  *Id*. at 654.  Here, Plaintiffs have alleged that Plaintiff Patricia Reiter held the

21 insurance policy for nearly two years, and that she paid premiums for that period through the

22 Initial Loan.  The allegations in the Amended Complaint are not sufficient to establish that the

23 Jefferson Pilot Policy was actually a wager policy.  Plaintiffs therefore cannot base their illegal

24 gaming claim on federal common law.

25         The alleged predicate act of illegal gaming also fails.

26

27         *3.1.3  Mail Fraud*

28

1   Plaintiffs' third alleged predicate act is mail fraud.  A RICO plaintiff must plead with

2   particularity the time, place, and manner of each alleged act of RICO fraud, with the role of each

3   defendant in each scheme.  *See Lancaster Comm. Hosp. v. Antelope Valley Hosp. Dist.*, 940 F.2d

4   397, 405 (9th Cir. 1991), *cert. denied*, 502 U.S. 1094 (1992).  But while "the factual

5   circumstances of the fraud itself" must be alleged with particularity, allegations concerning the

6   intent to defraud, or other allegations about a defendant's state of mind, may be alleged

7   generally.  *Odom v. Microsoft Corp.*, 486 F.3d 541, 553-54 (9th Cir. 2007) (en banc).  "Rule

8   9(b) demands that the circumstances constituting the alleged fraud be specific enough to give

9   defendants notice of the particular misconduct . . . so that they can defend against the charge and

10  not just deny that they have done anything wrong."  *Sanford v. MemberWorks, Inc.*, 625 F.3d

11  550, 558 (9th Cir. 2010) (quoting *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir.

12  2009) (internal quotation marks omitted)).

13  For mail fraud as a RICO predicate act, "it is necessary to show that (1) the defendants

14  formed a scheme or artifice to defraud; (2) the defendants used the United States mails or caused

15  a use of the United States mails in furtherance of the scheme; and (3) the defendants did so with

16  the specific intent to deceive or defraud." *Miller v. Yokohama Tire Corp.*, 358 F.3d 616, 620 (9th

17  Cir. 2004) (internal citations and quotations omitted).

18  Plaintiffs have failed to allege sufficiently the factual circumstances of the fraud as to

19  each of the New Moving Defendants.  As set forth in *Sanford*, Rule 9(b) requires that each

20  defendant have notice of their alleged misconduct.  The Amended Complaint fails to meet this

21  standard for the New Moving Defendants.  As discussed previously, the Court finds that

22  Plaintiffs have sufficiently alleged mail fraud as a predicate act for the Old Denied Defendants,

23  in part because the Initial Complaint and the Amended Complaint contain sufficient detail about

24  each of those defendants' actions and roles.  But the Amended Complaint does not meet that

25  standard as to the New Moving Defendants.  For example, regarding Mapleridge Financial,

26  Plaintiffs allege that it is "a company organized under the laws of the State of Michigan with its

27  principal place of business in the State of Michigan," (AC ¶ 53), that it "held ownership interest

28  in the Spurling entities" (id. ¶ 104), and that it "entered into an agreement to sell all of [its]

1   interest in Spurling and Spurling II to KBC Financial Holdings, Inc" (id. ¶ 139).  This is

2   insufficient to allege, for example, what role Defendant Mapleridge played in the alleged mail

3   fraud.  While Plaintiffs have alleged more facts than these concerning some of the other New

4   Moving Defendants, Plaintiffs have not alleged sufficient facts regarding any of the New

5   Moving Defendants to establish the predicate act of mail fraud.

7   *3.1.4   Wire Fraud*

9   Rule 9(b) pleading requirements apply to an alleged predicate act of wire fraud as well.

10   For wire fraud as a RICO predicate act, it is necessary to show "(1) a scheme to defraud; (2) use

11   of the wires in furtherance of the scheme; and (3) a specific intent to deceive or defraud."

12   *United States v. Green*, 592 F.3d 1057, 1064 (9th Cir. 2010) (internal citations and quotations

13   omitted).

14   For the reasons discussed in Section 3.1.3, Plaintiffs have also failed to allege with

15   required specificity the predicate act of wire fraud by any of the New Moving Defendants.

17   *3.1.5   Conclusion*

19   Plaintiffs have failed to sufficiently allege a RICO predicate act by any of the New

20   Moving Defendants.  Thus, the Court GRANTS the Motion to dismiss Claim One as to the New

21   Moving Defendants.

23   **3.2   Claim Two: California Business and Professions Code §§ 17200 et seq.**

25   The Unfair Competition Law ("UCL") prohibits "unfair competition" which is defined as

26   "any unlawful, unfair or fraudulent business act or practice . . . ."  Cal. Bus. & Prof. Code

27   § 17200.  "When determining whether a practice is 'unlawful,' section 17200 'borrows'

28   violations of other laws, and makes them independently actionable under the [UCL]."  *Aicco,*

1    *Inc. v. Ins . Co. of North Am.*, 90 Cal. App. 4th 579 (2001) (citing *Cel-Tech*, 20 Cal. 4th at 180).

2    "When a plaintiff who claims to have suffered injury from a direct competitor's 'unfair' act or

3    practice invokes section 17200, the word 'unfair' in that section means conduct that threatens an

4    incipient violation of an antitrust law, or violates the policy or spirit of one of those laws because

5    its effects are comparable to or the same as a violation of the law, or otherwise significantly

6    threatens or harms competition." *Cel-Tech*, 20 Cal. 4th 163.  But "[v]irtually any law—federal,

7    state or local—can serve as a predicate" for a UCL claim, "unless the defendant is privileged,

8    immunized by another statute, or the predicate statute expressly bars its enforcement" under the

9    UCL.  *Stevens v. Sup. Ct.*, 75 Cal. App. 4th 594, 602 (1999).

10         The UCL "imposes liability only for a party's personal participation in the unlawful

11   practices."  *Plascencia v. Lending 1st Mortgage*, 583 F.Supp.2d 1090, 1098 (N.D.Cal. 2008)

12   (internal citation and quotation omitted).  Plaintiffs have not sufficiently alleged the "personal

13   participation" of each of the New Moving Defendants in the alleged scheme.  While it is also

14   sufficient for UCL liability to allege that a defendant "aided and abetted the principle violator,"

15   *id.*, Plaintiffs have alleged aiding and abetting only in conclusory terms.  (AC ¶ 289

16   ("Defendants aided and abetted each other in accomplishing the wrongful acts.  In doing so,

17   defendants acted with an awareness of their wrongdoing and realized that their conduct

18   substantially assisted in the accomplishment of the wrongful conduct.").)  As stated previously,

19   "[a] claim has facial plausibility when the pleaded factual content allows the court to draw the

20   reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct at

21   1940 (citing *Twombly*, 550 U.S. at 556).  Plaintiffs allegations of UCL violations by the New

22   Moving Defendants are not sufficiently pleaded to be plausible.

23         Thus, the Court GRANTS the Motion to dismiss Claim Two as to the New Moving

24   Defendants.

25

26

27   **3.3     Claim Three: Breach of Fiduciary Duty**

28

To state a claim for breach of fiduciary duty, a plaintiff must establish "the existence of a fiduciary relationship, its breach, and damage proximately caused by that breach." *Roberts v. Lomanto*, 112 Cal. App. 4th 1553, 1562 (2003) (quoting *Pierce v. Lyman*, 1 Cal. App. 4th 1093, 1101 (1991)).

Plaintiffs have failed to allege facts sufficient to show the existence of a fiduciary relationship between any of the New Moving Defendants and the Plaintiffs.  It appears that Plaintiffs have not even alleged in conclusory terms that they have a fiduciary relationship with each of the New Moving Defendants.  Given the minimal roles some of the New Moving Defendants have played in this alleged scheme, it may be difficult for Plaintiffs *ever* to plausibly allege a fiduciary relationship with all of the Defendants – but that is a question for another day.  For now, Plaintiffs have failed in the Amended Complaint to state a claim against the New Moving Defendants for breach of fiduciary duty.

Thus, the Court GRANTS the Motion to dismiss Claim Three as to the New Moving Defendants.

### 3.4    Claim Four: Aiding and Abetting Breach of Fiduciary Duty

Liability for another's tort, such as aiding and abetting fiduciary duty, may be imposed if the defendant "(a) knows the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other to so act or (b) gives substantial assistance to the other in accomplishing a tortious result and the person's own conduct, separately considered, constitutes a breach of duty to the third person." *Casey v. U.S. Bank Nat'l Assn.*, 127 Cal. App. 4th 1138, 1144 (2005) (quoting *Saunders v. Superior Court*, 27 Cal. App. 4th 832, 846 (1994)).

Here, Plaintiffs have alleged no conduct of the New Moving Defendants amounting to "substantial assistance or encouragement" of the scheme that victimized Plaintiff.  Further, "California courts have long held that liability for aiding and abetting depends on proof the defendant had actual knowledge of the specific primary wrong the defendant substantially assisted." *Id*. at 1145 (2005).  Plaintiffs have not sufficiently alleged actual knowledge by the

1    New Moving Defendants.

2          Thus, the Court GRANTS the Motion to dismiss Claim Four as to the New Moving

3    Defendants.

4

5    ### 3.5    Claim Five: Fraudulent Concealment in Violation California Civil Code

6

7          California Civil Code § 1709 states: "One who willfully deceives another with intent to

8    induce him to alter his position to his injury or risk, is liable for any damage which he thereby

9    suffers."  And Section 1710 provides that a deceit includes "[t]he suppression of a fact, by one

10   who is bound to disclose it, or who gives information of other facts which are likely to mislead

11   for want of communication of that fact."

12         Thus, Plaintiffs could state this claim for fraudulent concealment by alleging that the New

13   Moving Defendants had a duty to disclose certain facts.  But Plaintiffs haven't done that.

14   Plaintiffs fail to allege sufficient facts to show a relationship, or even interaction, between the

15   New Moving Defendants and the Plaintiffs.  Or Plaintiffs could state a claim by showing that the

16   New Moving Defendants gave some information to Plaintiffs but withheld key facts.  But

17   Plaintiffs haven't done that either.  And as with certain of the alleged RICO predicate acts, Rule

18   9(b) requires a heightened pleading standard for this claim, but Plaintiffs fail to meet that

19   heightened standard as to the New Moving Defendants.

20         Thus, the Court GRANTS the Motion to dismiss Claim Five as to the New Moving

21   Defendants.

22

23   ### 3.6    Claim Six: Unjust Enrichment

24

25         In the Dismissal Order, the Court noted that "[a] person is unjustly enriched if the

26   retention of the benefit would be unjust."  *Earhart v. William Low Co.*, 25 Cal.3d 503, 518

27   (1979) (quoting Restatement (First) of Restitution § 1, cmt. a (1937)).  Here, Plaintiffs have not

28   sufficiently alleged what benefit the New Moving Defendants have obtained from the Plaintiffs.

1    While the Court finds that Plaintiffs have stated an unjust enrichment claim against the Old

2    Denied Defendants, Plaintiffs have not alleged sufficient facts to support such a claim against

3    the numerous New Moving Defendants.

4        Thus, the Court GRANTS the Motion to dismiss Claim Six as to the New Moving

5    Defendants.

6

7    **3.7    Claim Seven: Common Law Fraudulent Concealment**

8

9        To state a claim for fraudulent concealment, a plaintiff must allege that (1) the defendant

10   must have concealed or suppressed a material fact, (2) the defendant must have been under a

11   duty to disclose the fact to the plaintiff, (3) the defendant must have intentionally concealed or

12   suppressed the fact with the intent to defraud the plaintiff, (4) the plaintiff must have been

13   unaware of the fact and would not have acted as he did if he had known of the concealed or

14   suppressed fact, and (5) as a result of the concealment or suppression of the fact, the plaintiff

15   must have sustained damage. *Marketing West, Inc. v. Sanyo Fisher (USA) Corp.*, 6 Cal. App.

16   4th 603, 613 (1992).

17       As with Claim Five, Plaintiffs have not alleged the existence of a duty to disclose

18   between Plaintiffs and the New Moving Defendants.  Plaintiffs have also failed to allege what

19   specific facts each of the New Moving Defendants supposedly concealed from Plaintiffs.  Nor

20   do Plaintiffs meet the heightened pleading standard of Rule 9(b).

21       Thus, the Court GRANTS the Motion to dismiss Claim Seven as to the New Moving

22   Defendants.

23

24   **3.8    Claim Eight: Usury**

25

26       Of the New Moving Defendants, Claim Eight is asserted only against the "XE Entities" as

27   defined in the Amended Complaint.  And of the XE Entities, only XE Capital Management, XE

28   Capital Advisors, and XE Life joined the Motion.  (Dkt. # 157.)

1    As discussed previously, the Court granted the motion to dismiss this claim as to the Old

2    Denied Defendants.  The XE Entities have not raised any independent arguments about why this

3    claim should fail as to them.

4    Thus, the Court GRANTS the Motion to dismiss Claim Eight as to the relevant New

5    Moving Defendants for the same reasons previously discussed.

6

7    **DISPOSITION**

8

9    The Court DENIES the Motion to Dismiss Claims One through Seven as to the Old

10   Denied Defendants.  The Court GRANTS the Motion to Dismiss Claim Eight as to the Old

11   Denied Defendants, with leave to amend.  The Court DENIES the Motion to Dismiss Claims

12   One through Seven as to the Swope Defendants.  The Court GRANTS the Motion to Dismiss

13   Claims One through Eight as to the New Moving Defendants, with leave to amend.

14   In particular, Plaintiffs should carefully consider whether to keep all New Moving

15   Defendants as parties to this lawsuit.  Plaintiffs may file an amended complaint within 14 days of

16   this Order.

17

18

19

20   IT IS SO ORDERED.

21   DATED: August 31, 2011

22                                                    _____

23                                                    Andrew J. Guilford
                                                      United States District Judge

24

25

26

27

28